UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, Plaintiff, - against - GJM ENGINEERING, INC., Defendant. | 24-CV-6857 (VSB) **OPINION & ORDER** |

Appearances:

Anthony M. Tessitore
George Z. Twill
Tressler LLP
New York, NY
*Counsel for Plaintiff*

Anthony B. Crawford
Olshan Frome and Wolosky LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Before me are the cross-motions for judgment on the pleadings of Mt. Hawley Insurance Company ("Mt. Hawley" or "Plaintiff") and GJM Engineering, Inc. ("GJM" or "Defendant"). For the reasons stated below, Mt. Hawley's motion for judgment on the pleadings is DENIED and GJM's motion for judgment on the pleadings is GRANTED.

## I. Factual Background

### A. *Mt. Hawley Policies*

Mt. Hawley issued four Commercial General Liability Insurance Policies to GJM: (1) policy MGL0192897 with a policy period effective October 20, 2020 to October 20, 2021, (Doc.

1-5); (2) MGL0195619 with a policy period effective October 20, 2021 to October 20, 2022, (Doc. 1-6); (3) MGL0196328 with a policy period effective October 20, 2022 to October 20, 2023, (Doc. 1-7); and (4) MGL0198027 with a policy period effective October 20, 2023 to October 20, 2024, (Doc. 1-8), (together, the "Mt. Hawley Policies"). (Doc. 1 ("Complaint" or "Compl.") ¶ 10.) The Mt. Hawley Policies contain a Continuous or Progressive Injury and Damage exclusion (the "CPID Exclusion"), which provides as follows:

> **CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> 1. This insurance does not apply to any damages because of or related to "bodily injury," "property damage," or "personal and advertising injury":
>
> a. Which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or
>
> b. Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury," "property damage," or "personal and advertising injury" continues during this policy period; or
>
> 2. This insurance does not apply to any damages because of or related to "property damage," or "personal and advertising injury" which were caused, or are alleged to have been caused by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this policy.
>
> We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.

(Compl. ¶ 18; *see* Doc. 1-5 at 62; Doc. 1-6 at 63; Doc. 1-7 at 61; Doc. 1-8 at 62.)

The Mt. Hawley Policies provide that Plaintiff would "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Compl. ¶ 16; *see also* Doc. 1-5 at 7 (Section I – Coverages, ¶

1(a)); Doc. 1-6 at 7 (Section I – Coverages, ¶ 1(a)); Doc. 1-7 at 7 (Section I – Coverages, ¶ 1(a)); Doc. 1-8 at 7 (Section I – Coverages, ¶ 1(a)).) The Mt. Hawley Policies also provide, that Plaintiff "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (*Id.*) The Mt. Hawley Policies establish that the insurance coverage applies "only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' and [t]he 'bodily injury' or 'property damage' occurs during the policy period." (*Id.*) The Mt. Hawley Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-5 at 21 (Section V – Definitions, ¶ 13); Doc. 1-6 at 21 (Section V – Definitions, ¶ 13); Doc. 1-7 at 21 (Section V – Definitions, ¶ 13); Doc. 1-8 at 21 (Section V – Definitions, ¶ 13).) The Mt. Hawley Policies provide two disjunctive definitions of "property damage": "(a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Doc. 1-5 at 22 (Section V – Definitions, ¶ 17); Doc. 1-6 at 22 (Section V – Definitions, ¶ 17); Doc. 1-7 at 22 (Section V – Definitions, ¶ 17); Doc. 1-8 at 22 (Section V – Definitions, ¶ 17).)

### B. *The Underlying Action*

On December 14, 2023, a First Amended Complaint was filed against Aquatherm L.P., Aetna NA, L.C., and Aquatherm GMBH (collectively, "Aquatherm") in an action captioned *GH Palmer, Inc., et al. v. Aquatherm, L.P., et al.*, Case No. 21STCV23784, in the Los Angeles County, California Superior Court, (the "Palmer action"). (*See* Doc. 15-3 ("Palmer FAC").)

Aquatherm manufactures and sells piping. (*Id.* ¶¶ 10, 14–15.) Plaintiffs in the Palmer action allege that beginning in 2015, piping at three apartment buildings in Los Angeles, California—referred to as the Lorenzo, the Da Vinci, and Broadway Palace (collectively, the "Subject Properties")—began to leak, causing significant damage and requiring replacement of the piping. (Compl. ¶ 1.)

On February 23, 2024, Aquatherm filed a cross complaint against GJM, the plumbing contractor for the Subject Properties, and GH Palmer, a real estate developer. (Compl. ¶ 1; *see also* Doc. 1-1 ("Aquatherm Cross-Complaint).) The Aquatherm Cross-Complaint alleges, in part, that GJM defectively installed and/or improperly handled or utilized certain piping products at the Subject Properties and that it was GJM's work that led to the damage suffered in the Palmer action. (Compl. ¶¶ 1, 28; *see also* Aquatherm Cross-Complaint ¶¶ 5, 16–32.) The Aquatherm Cross-Complaint alleges three causes of action against GJM: (1) negligence, (2) contribution for damages complained of by plaintiffs in the Palmer action, and (3) implied and equitable indemnity as to any amounts recovered by plaintiffs in the Palmer action. (Aquatherm Cross-Complaint ¶¶ 20–32.)

Plaintiffs in the Palmer action allege that construction of the Lorenzo was completed in 2014 and the leaks and associated damage began in February 2015, and construction of the Da Vinci was completed in 2016 and the leaks and associated damage began in March 2019, (Compl. ¶¶ 19–21; Palmer FAC ¶¶ 59, 94)—both prior to the issuance of the Mt. Hawley Policies in 2020. Plaintiffs in the Palmer action further allege that construction of the Broadway Palace completed in 2020 and experienced leaks and associated damage in June 2021 and August 2022, (Compl. ¶ 19; Palmer FAC ¶ 22)—within the policy period for the Mt. Hawley Policies.

## II. Procedural History

Plaintiff commenced this action by filing a complaint for declaratory judgment on September 11, 2024. (*See* Compl.) Plaintiff sought judgment declaring that, among other things, it has no duty to defend or indemnify GJM in connection with the Aquatherm Cross-Complaint because the property damage at issue in the Palmer action (i) existed or is alleged to have existed prior to the inception of the Mt. Hawley Policies and the property damage and (ii) was caused or is alleged to have been caused by a defect, deficiency, inadequacy or condition which first existed prior to the inception date of the Mt. Hawley Policies. (*Id.* ¶¶ 29–30.)

On October 18, 2024, GJM filed an answer and counterclaim, seeking a declaratory judgment that Mt. Hawley has a duty to defend GJM (Count I) and a duty to indemnify GJM (Count II), and asserting that Mt. Hawley breached its contractual obligations under the Mt. Hawley Policies by denying coverage and failing to defend GJM, (Count III). (Doc. 15 ("Counterclaim") at ¶¶ 26–45.)

On December 13, 2024, GJM filed a motion for judgment on the pleadings, (Doc. 26), along with a memorandum of law in support of the motion for judgment on the pleadings that Mt. Hawley has a duty to defend GJM, (Doc. 27 ("GJM Mem.")),[1] and a declaration attaching several exhibits, (Docs. 28, 28-1–28-3). On that same date, Mt. Hawley filed a motion for judgment on the pleadings, (Doc. 29), along with a memorandum of law in support of the motion for judgment on the pleadings that Mt. Hawley has no duty to defend or indemnify GJM, (Doc. 30 ("Mt. Hawley Mem.")). On January 17, 2025, the parties filed their oppositions to the cross-motions for judgment on the pleadings. (*See* Doc. 37 ("GJM Opp'n"); Doc. 38 ("Mt. Hawley

[1] GJM's motion for judgment on the pleadings was only brought with respect to Count I of the Counterclaim, which alleges that Mt. Hawley has a duty to defend GJM. (*See* GJM Mem.)

Opp'n").) On January 31, 2025, the parties filed their replies to the cross-motions for judgment on the pleadings. (*See* Doc. 39 ("GJM Reply"); Doc. 40 ("Mt. Hawley Reply").)

On January 29, 2026, GJM filed a letter inquiring as to the status of the pending cross-motions for judgment on the pleadings. (Doc. 45.) On February 9, 2026, I memo endorsed GJM's January 29, 2026 letter stating that I am in receipt of the cross-motions for judgment on the pleadings and a decision will issue in due course. (Doc. 46.) On May 6, 2026, GJM filed another letter inquiring as to the status of the pending cross-motions for judgment on the pleadings, (Doc. 47), which I memo endorsed on the same date with a similar endorsement stating that I am in receipt of the cross-motions for judgment on the pleadings and a decision will issue in due course, (Doc. 48).

## III. Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). This means "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the moving party is entitled to judgment as a matter of law." *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (internal quotation marks omitted). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated

in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"). "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

## IV. <u>Discussion</u>

Mt. Hawley contends that it does not have a duty to defend or indemnify GJM in connection with the Palmer action because the CPID Exclusion in the Mt. Hawley Policies precludes a duty to defend or indemnify since the alleged property damage either began before the issuance of the Mt. Hawley Policies or is the result of defective work performed before the issuance of the Mt. Hawley Policies. (Mt. Hawley Mem. 8–12.) In contrast, GJM's position is that Mt. Hawley has a duty to defend GJM because the occurrence triggering insurance coverage took place when the property damage at the Broadway Palace occurred within the policy period, even though the construction of the Broadway Palace was completed before the Mt. Hawley Policies were issued. (GJM Mem 6–8.) GJM thus asserts that because the damage allegedly caused in the Broadway Palace occurred after the issuance of the Mt. Hawley Policies and is

covered, Mt. Hawley is required to defend the entire Aquatherm Cross-Complaint and the CPID Exclusion does not preclude coverage. (*Id.* at 5–8.) Therefore, the questions that must be answered to resolve the motions are: (1) whether the coverage in the Mt. Hawley Policies is triggered; (2) whether an exclusion applies such that there is no coverage under the Mt. Hawley Policies; and (3) if Mt. Hawley does have a duty to defend based on the alleged damage at Broadway Palace, whether Mt. Hawley has a duty to defend and/or indemnify the claims in the entire Aquatherm Cross-Complaint.

**A. *Duty to Defend***

"The duty to defend is broader than the duty to indemnify." *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y. 2013), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013) (summary order). "The duty to defend 'is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person.'" *Id.* (quoting *Servidone Const. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)).

Under New York law,[2] "[a]n insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002) (internal quotation marks omitted). Thus, an insurer's duty to defend "is generally determined by comparing the allegations of the complaints to the terms of the relevant policies." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002).

[2] Both parties appear to agree that that New York substantive law applies here. (*See generally* GJM Mem. (analyzing New York law); Mt. Hawley Mem. (same); *see also* Mt. Hawley Reply 7 n.1 ("The Mt. Hawley Policies contain a Choice of Law provision which provides that all matters arising under the policies including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).) There is no dispute that New York law governs the Mt. Hawley Policies.").)

"Indeed, an insurer has a duty to defend even if 'facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.'" *Id.* (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991)). "If, liberally construed, the claim is within the embrace of the policy, the insurer must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006) (internal quotation marks omitted). "Moreover, even if the complaint is *ambiguous* as to a fact material to coverage, the ambiguity must be resolved in favor of the insured." *W. Waterproofing Co., Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-3199, 2022 WL 329225, at *7 (S.D.N.Y. Feb. 3, 2022) (emphasis in original) (citing *Int'l Bus. Machs. v. Liberty Mut. Fire Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004)). In other words, the ambiguity must be resolved in favor of coverage. *Stamford Wallpaper Co. v. TIG Ins.*, 138 F.3d 75, 80 (2d Cir. 1998) ("[W]here the language of a policy is ambiguous, it must be construed in favor of coverage.").

"[A]n insurer may avoid its duty to defend only if it establishes, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify the insured under any provision of the insurance policy." *DPC New York, Inc. v. Scottsdale Ins. Co*., No. 19-CV-1743, 2020 WL 2555241, at *7 (S.D.N.Y. May 19, 2020) (internal quotation marks omitted and alteration adopted). "In order to demonstrate that it has no duty to defend an insured, an insurer must demonstrate that the allegations of the underlying complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify under any policy provision." *Id.* at *8 (internal quotation marks omitted and alteration adopted).

**1. Whether the Alleged Physical Damage Triggered Coverage**

First, "to determine if a defense obligation exists, [I] must determine whether the allegations, 'liberally construed,' are 'within the embrace of the policy.'" *The Vill. of Piermont v. Am. Alternative Ins. Corp.*, 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015) (quoting *Century 21, Inc.*, 442 F.3d at 83). "The approach to determine when a policy is triggered under controlling New York law is a 'damage-in-fact' trigger, meaning that the coverage will be invoked if it is shown that the damage to the property actually occurred during the period for which the insurer was on the risk." *Island Lathing & Plastering v. Travelers Indem. Co.*, 161 F. Supp. 2d 278, 283–84 (S.D.N.Y. 2001) (internal quotation marks omitted); *see also Maxum Indem. Co. v. A One Testing Lab'ys, Inc.*, 150 F. Supp. 3d 278, 285 (S.D.N.Y. 2015) (holding the policy did not cover the asserted claims because "they would have occurred prior to the policy period and thus be excluded from coverage").

For coverage under the Mt. Hawley Policies to be triggered, property damage must "occur[] during the policy period." (Compl. ¶ 16; *see also* Doc. 1-5 at 7 (Section I – Coverages, ¶ 1(b)); Doc. 1-6 at 7 (Section I – Coverages, ¶ 1(b)); Doc. 1-7 at 7 (Section I – Coverages, ¶ 1(b)); Doc. 1-8 at 7 (Section I – Coverages, ¶ 1(b)).) "Occurrence" is defined by the Mt. Hawley Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 1-5 at 21 (Section V – Definitions, ¶ 13); Doc. 1-6 at 21 (Section V – Definitions, ¶ 13); Doc. 1-7 at 21 (Section V – Definitions, ¶ 13); Doc. 1-8 at 21 (Section V – Definitions, ¶ 13).) Plaintiffs in the Palmer action assert that construction of the Subject Properties was completed in June 2014, July 2016, and 2020. (Compl. ¶ 19; Palmer FAC ¶¶ 20–22.) Plaintiffs in the Palmer action further assert that leaks and associated damage began at the Lorenzo in 2015 and the Da Vinci in 2019, before Plaintiff issued the Mt. Hawley

Policies.[3] (Compl. ¶¶ 20–21; Palmer FAC ¶¶ 59, 94 107.) However, Plaintiffs in the Palmer action allege that the Broadway Palace began to experience its first leaks in June 2021 and August 2022, within the policy period of the Mt. Hawley Policies. (Palmer FAC ¶¶ 77, 97, 181.) "There is no dispute that the cross-complaint against GJM in the Palmer action alleges a potential claim for 'property damage' during the Mt. Hawley Policies' policy periods." (Mt. Hawley Opp'n 7; *see id.* at 8–9 ("[Th]e [Palmer FAC] and Cross-Complaint may suggest that damage occurred at the Broadway Palace during the Mt. Hawley policy period.").) Accordingly, coverage for the Mt. Hawley Policies was triggered by property damage at Broadway Palace within the policy period.

**2. Whether the CPID Exclusion Applies to Preclude Coverage**

Although the claims related to damage at Broadway Palace appear to be covered by the Mt. Hawley Policies, Mt. Hawley argues that there is no coverage for these claims because they are subject to the CPID Exclusion. (Mt. Hawley Mem. 8–12.) As discussed above, the CPID Exclusion provides that insurance does not apply to property damage (1) "[w]hich first existed, or are alleged to have first existed, prior to the inception date of this Policy; or . . . [w]hich are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged . . . 'property damage['] . . . continues during this policy period" or (2) "which were caused, or are alleged to have been caused by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this policy." (Compl. ¶ 18; *see* Doc. 1-5 at 62; Doc. 1-6 at 63; Doc. 1-7 at 61; Doc. 1-8 at 62.) Based on this language, Mt. Hawley argues that the coverage sought by GJM is barred because the property damage complained of in

[3] GJM "acknowledges that the damage occurring at the Lorenzo and the Da Vinci occurred outside the policy period of the Mt. Hawley Policy and GJM Engineering is not seeking insurance coverage from Mt. Hawley for that damage." (GJM Reply 9.)

the Aquatherm Cross-Complaint related to the Da Vinci and the Lorenzo either began prior to the inception of the Mt. Hawley Policies, *i.e.*, before October 20, 2020, and, in the case of the Broadway Palace, was allegedly caused by a defect, GJM's allegedly negligent or defective work, that existed prior to the inception of the Mt. Hawley Policies. (*See generally* Mt. Hawley Opp'n.) In response, GJM argues that the Palmer FAC and Aquatherm Cross-Complaint "do not conclusively establish that property damage at Broadway Palace was, or was alleged, to have 'first existed' or be 'in the process of taking place' 'prior to the inception date' of the Mt. Hawley Policy in October 2020, as required by the CPID exclusion." (GJM Opp'n 9.) Moreover, GJM takes issue with Mt. Hawley's assertion that the damage at the Broadway Palace existed prior to the inception of the Mt. Hawley Policies because it asserts that GJM completed its allegedly negligent work in 2018 based on an email by a GJM employee attached to the Complaint. (*Id.* at 10–11; GJM Reply 2–4.) GJM asserts that Mt. Hawley cannot argue that a "defect" existed at the Broadway Palace prior to the inception of the Mt. Hawley Policies because a "defect" cannot be an action, such as GJM's alleged negligent installation and maintenance of any pipes, but must instead be a physical thing. (*See id.*)

Under the plain language of the CPID Exclusion, coverage for property damage that existed prior to the issuance of coverage and "continues during th[e] policy period" is excluded from coverage. (Compl. ¶ 18; *see* Doc. 1-5 at 62; Doc. 1-6 at 63; Doc. 1-7 at 61; Doc. 1-8 at 62.) Thus, the coverage for the property damage at the Lorenzo and the Da Vinci, which began in 2015 and 2019 respectively, (Compl. ¶¶ 20–21), is excluded under the CPID Exclusion because the leaks in those properties began before the Mt. Hawley Policies were issued in 2020.

The coverage for the property damage at Broadway Palace presents a more complicated issue. GJM began installing Aquatherm pipes at Broadway Palace starting in or about January

2015, construction was completed in or about December 2020, and the first leaks were detected in June 2021 and August 2022. (Palmer FAC ¶¶ 22, 54, 97, 180–81.) Plaintiffs in the Palmer action allege that the pipes installed in the Subject Properties, including Broadway Palace, had a manufacturer and design defect and that those defects "in the Aquatherm Green Pipe were a substantial factor in causing Plaintiffs' harm." (*Id.* ¶¶ 118, 124.) Plaintiffs in the Palmer action did not sue GJM or assert a claim of negligence. (*See* Palmer FAC (suing Aquatherm and alleging claims of, among other things, breach of express warranty, strict products liability for manufacturing defect, strict products liability for design defect).) Indeed, Plaintiffs in the Palmer action allege that the Aquatherm pipes in Broadway Palace "were properly installed by a trained and certified Aquatherm Installer using Aquatherm-approved tools" and that "before the system began full operation in December 2020, GJM performed and recorded a pressure test, signed by one or more of [the developer] and GJM, stating the place, contractor installer number, and pressure test data." (*Id.* ¶ 184.) The Aquatherm Cross-Complaint, in turn, brings a cause of action for negligence against GJM. (*See* Aquatherm Cross-Complaint ¶¶ 20–24.) Aquatherm alleges that "[a]fter the Lorenzo was completed, Aquatherm LP identified and further advised [the developer] and/or GJM of: a. Improper/non-compliant installation methods used by GJM (including, but not limited to, failing to comply with industry standards and recommended installation methods for clamping and supporting Aquatherm piping); b. Improper system conditions resulting from improper system design at the Lorenzo (including, but not limited to, the selection and installation of an incompatible solar heating water system piped in copper); and c. Improper system maintenance and system operations (including, but not limited to, maintaining and operating its solar heating water system pipe in copper contrary to industry standards, including temperature and velocity recommendation issued by the Copper

Development Association)." (*Id.* ¶ 16.) With respect to Broadway Palace, Aquatherm alleges that "[t]o the extent improper installation, improper system design, improper system maintenance, and improper system operations also exist at the Da Vinci and/or Broadway Palace, those conditions are outside the recommended use of Aquatherm products." (*Id.* ¶ 19.) The Aquatherm Cross-Complaint provides no further detail as to the GJM's alleged negligence with respect to Broadway Palace.

"Given the absence of detail in the [Aquatherm Cross-Complaint] concerning [GJM's] alleged negligence and the damage it caused to [Broadway Palace], however, it is impossible to determine what, if any, relationship exists between [GJM's] alleged negligence and the damage it allegedly caused to [Broadway Palace], and the damage [Broadway Palace] sustained" beginning in June 2021. *DPC New York, Inc.*, 2020 WL 2555241, at *10. Furthermore, the Aquatherm Cross-Complaint does not allege the timing of GJM's "improper installation . . . system design . . . system maintenance, and . . . system operations." (Aquatherm Cross-Complaint ¶ 19.) Moreover, the Palmer FAC notes that "before the system began full operation in December 2020, GJM performed and recorded a pressure test, signed by one or more of [the developer] and GJM, stating the place, contractor installer number, and pressure test data." (Palmer FAC ¶ 184.) It is thus also unclear, at this stage, whether GJM's actions in December 2020, during the policy period, could have caused property damage at Broadway Palace or are the alleged "improper system maintenance[] and improper system operations" that Aquatherm alleges occurred at Broadway Palace. (Aquatherm Cross-Complaint ¶ 19.)

"In determining whether the insurer will never have a duty to indemnify the insured, a court may look to evidence extrinsic that is unrelated to the merits of plaintiff's action, if it will plainly take the case outside the policy coverage. But the extrinsic evidence relied upon may not

overlap with the facts at issue in the underlying case." *Peleus Ins. Co. v. Atl. State Dev. Corp.*, 587 F. Supp. 3d 7, 16 (S.D.N.Y. 2022) (internal quotation marks and citation omitted). Mt. Hawley points to an April 10, 2024 email from a GJM employee, attached to the Complaint, indicating that GJM's work in connection with the installation of piping in the Broadway Palace was completed in March 2018 instead of 2020 as alleged in the Palmer action, before Plaintiff issued the Mt. Hawley Policies. (Compl. ¶¶ 19, 22; *see also* Doc. 1-9). Here, both parties refer to this email as extrinsic evidence; therefore, I accept without deciding the question whether or not the email is in fact extrinsic evidence. (*See* Mt. Hawley Opp'n 11–12; GJM Opp'n 14.) I agree with Mt. Hawley that the timing of GJM's work at Broadway Palace has no bearing on the claims in the Palmer FAC or the Aquatherm Cross-Complaint. (Mt. Hawley Opp'n 11–12.) However, I nonetheless do not consider the extrinsic evidence because it does not take the Aquatherm Cross-Complaint out of coverage since it does not establish with certainty that Mt. Hawley has no basis to indemnify GJM. Therefore, even assuming that the email from the GJM employee is true, it is still unclear, for example, whether GJM performed any maintenance or operations at Broadway Palace after October 2020, including the pressure test in December 2020, after the installation completed in 2018, whether any of GJM's actions were allegedly negligent, and whether GJM's allegedly negligent actions caused the leaks and associated damage at Broadway Palace. "Accordingly, the applicability of the [CPID] exclusion provision is unknown." *DPC New York, Inc.*, 2020 WL 2555241, at *10 (determining that "the applicability of the 'Continuing or Ongoing Damage' exclusion provision is unknown" because it was unknown "whether there is any connection between the damage DPC allegedly caused to the Sung Building and the damage caused before DPC was hired as the general contractor"). "Given these circumstances, [I] cannot rule—at this very early stage of the proceedings—that the

allegations of the [Aquatherm Cross-Complaint] cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify under any policy provision." *Id.* (internal quotation marks omitted).

Because I cannot ascertain with certainty whether property damage was "caused, or [] alleged to have been caused by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this policy," in October 2020, the CPID Exclusion may not serve as a basis for Mt. Hawley to disclaim its duty to defend. "This conclusion would seem to reward [GJM] for the vagueness of its adversaries' complaints in the [Palmer action]. But that outcome is mandated by the broad requirements of the duty to defend and [Mt. Hawley's] corresponding heavy burden to demonstrate that there is no reasonable possibility that the [Aquatherm Cross-Complaint] could fall outside the scope of the exclusion. [Mt. Hawley's] duty to defend thus endures unless and until it clarifies with certainty that any potential claims fall entirely outside of the scope of the coverage owed to [GJM]." *Scottsdale Ins. Co. v. United Indus. & Const. Corp.*, 137 F. Supp. 3d 167, 178 (E.D.N.Y. 2015) (internal citations omitted); *see also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 621–22 (2d Cir. 2001) (noting that if the duty to defend cannot be eliminated "by examining the face of the complaint," the insurer can "extricate itself early by demanding a bill of particulars" and that "[a]s a result, the duty to defend lasts only until the factual ambiguity is resolved in favor of the insurer"). In other words, Mt. Hawley's obligation to defend GJM need not continue until the resolution of the Palmer action; instead, Mt. Hawley's obligation to defend GJM endures only until it is determined that the physical damage at Broadway Palace was caused by GJM's negligence and that such negligence existed prior to the issuance of the Mt. Hawley Policies.

### 3. Whether Mt. Hawley Has a Duty to Defend the Entire Action

"[I]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *High Point Design, LLC v. LM Ins. Corp*., 911 F.3d 89, 95 (2d Cir. 2018) (internal quotation marks omitted). "It is 'immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage.'" *Great Am. Ins. Co. v. AIG Specialty Ins. Co*., No. 20-CV-4596, 2021 WL 1268450, at *2 (S.D.N.Y. Apr. 6, 2021), *aff'd*, No. 21-1298, 2022 WL 17587851 (2d Cir. Dec. 13, 2022) (summary order) (quoting *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co*., 16 N.Y.3d 257, 265 (2011)). Having concluded that Mt. Hawley has a duty to defend as to the claim related to the Broadway Palace because it is encompassed within the Mt. Hawley Policies' coverage of liability, Mt. Hawley is obligated to provide coverage for the entire Aquatherm Cross-Complaint, including the claims related to the Lorenzo and the Da Vinci. It is immaterial that alleged damages at the Lorenzo and the Da Vinci are outside of the scope of coverage under the Mt. Hawley Policies because I have determined that the claims related to the Broadway Palace are within the scope of coverage under the Mt. Hawley Policies and thus Mt. Hawley's duty to defend the entire action is triggered. *See Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, No. 95-CV-4845, 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) ("The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy."(citing *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310–311 (1984))); *Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 690 N.E.2d 866, 869 (1997) ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action."); *City of New York v. Philadelphia Indem. Ins. Co.*, 485 F. Supp. 3d 410, 419 (S.D.N.Y. 2020) ("Having concluded that [the defendant] has a duty to defend based on the

wrongful death claim, [the defendant] has a duty to defend the entire action, including the NYPD claims.”).

### B. *Duty to Indemnify*

Unlike the duty to defend, “the duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts.” *Travelers Prop. Cas. Corp. v. Winterthur Int’l*, No. 02-CV-2406, 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002). “Where the facts on which the Court’s decision depends have yet to unfold, a declaratory judgment action is ‘not currently a justiciable and ripe controversy and dismissal of the complaint without prejudice is the correct disposition of the action. This leaves open the possibility that at some future time a more complete development of the facts might lead to a different result.’” *Id.* (alterations adopted) (quoting *Certain Underwriters at Lloyd’s, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 676 (2d Cir. 1996)).

Mt. Hawley seeks a declaration that it does not have a duty to indemnify GJM in the Palmer action. (*See* Mt. Hawley Mem. 8–12; Mt. Hawley Reply 12–16.) GJM asserts that Mt. Hawley’s motion for judgment on the pleadings regarding its duty to indemnify is premature because the Palmer action is not yet resolved and there remain factual disputes which may invoke coverage under the Mt. Hawley Policies, such as whether GJM negligently installed the Aquatherm pipes. (*See* GJM Opp’n 16–17.) GJM is correct. A decision as to Mt. Hawley’s duty to indemnify GJM would be highly speculative, and might be rendered moot by the result in the Palmer action and Aquatherm Cross-Complaint. *See, e.g.*, *Travelers*, 2002 WL 1391920, at *6–7 (holding that any decision on defendant’s duty to indemnify plaintiff first required a determination on “the single decisive issue of negligence . . . by the state court in the underlying action”); *cf. Combustion Eng’g, Inc. v. Travelers Indem. Co.*, 53 N.Y.2d 875, 877 (1981)

(affirming decision that "a declaratory judgment [was] premature" in light of the fact that the resolution of the case "depend[ed] upon a future event beyond the control of the parties" (internal quotation marks omitted)). In addition to the resolution of claims, it is premature to decide the duty to indemnify because, as noted *supra* Part IV.A.2, it may be later determined that the CPID Exclusion does apply if GJM's allegedly negligent actions predate the issuance of the Mt. Hawley Policies.

Accordingly, Mt. Hawley's claim for a declaratory judgment as to its duty to indemnify GJM is dismissed without prejudice as premature.

## V. <u>Conclusion</u>

For the foregoing reasons, I conclude that Mt. Hawley has a duty to defend GJM, but that a ruling with respect to indemnity is premature. Accordingly, Mt. Hawley's motion for judgment on the pleadings is DENIED and GJM's motion for judgment on the pleadings is GRANTED.

The Clerk of Court is respectfully directed to terminate the open motions at Docs. 26 and 29.

SO ORDERED.

Dated: July 29, 2026
New York, New York

Vernon S. Broderick
United States District Judge